[Cite as *Fobbs v. Dan R.'s Automotive, Inc.*, 2017-Ohio-210.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

| | |
|---|---|
| Dorie M. Fobbs, II, et al. | Court of Appeals No. L-16-1046 |
| Appellees | Trial Court No. 15 CVH 00319 |
| v. | |
| Dan R's Automotive, Inc. | **DECISION AND JUDGMENT** |
| Appellant | Decided: January 20, 2017 |

* * * * *

Joseph P. Dawson, for appellees.

Joseph R. Torda and Zachary J. Murry, for appellant.

* * * * *

**YARBROUGH, J.**

{¶ 1} This is an appeal from the judgment of the Oregon Municipal Court following a bench trial. Appellant, Dan R.'s Automotive, Inc. ("Dan R.'s"), challenges the trial court's award of $6,590.47 to appellees, Dorie and Regina Fobbs, on their claim for breach of a warranty agreement. For the reasons that follow, we affirm.

## I. Facts and Procedural Background

{¶ 2} The underlying facts are largely not in dispute. In November 2014, Dorie entered into an agreement with Dan R.'s to install a used replacement engine in a Dodge Durango that was titled in his wife's, Regina, name. The used engine cost $3,140.00, and came with a 6 month / 6,000 mile warranty. As part of the service, Dan R.'s also installed a number of other parts, including a starter, engine oil pan, radiator hose, fan clutch, and front drive shaft. The total cost of the service, including parts, labor, and tax, was $6,590.47.

{¶ 3} Relevant here, the warranty provision on the replacement engine stated, "Required for warranty status; bring vehicle back in 15 days or 500 miles for reinspection of repairs / owner to inspect fluid levels a minimum of once a month / oil change services every 3 months or 3,000 miles / address any engine warning lights or driveability conditions immediately if such condition occurs."

{¶ 4} In this case, the parties agree that the only warranty provision in dispute is whether Dorie "address[ed] any engine warning lights or driveability conditions immediately if such condition occurs." The circumstances surrounding the dispute are as follows:

{¶ 5} On January 19, 2015, Dorie left his home in the Durango, and entered southbound Interstate 75 from the Collingwood entrance ramp. Dorie was heading to his place of employment in North Baltimore. Shortly after he passed the Luckey/Haskins exit he noticed that the vehicle became sluggish and the temperature warning light

2.

activated. Dorie called Dan R.'s, and ultimately spoke with Kathy Reichow, the company's president. Reichow instructed Dorie to stop driving the vehicle immediately and let her know where he left the vehicle, so that she could have someone tow it back to Dan R.'s.

{¶ 6} Dorie testified that, at the time, Interstate 75 was under construction, and because of heavy traffic, he could not safely navigate the Durango to one of the emergency pull-off zones. Dorie continued driving for approximately eight minutes after the temperature warning light came on until he reached the next exit for Bowling Green, where he parked the vehicle at a gas station.

{¶ 7} Dan R.'s had the vehicle towed back to its shop. Upon examination, it was discovered that the engine had been driven in an overheated condition, likely due to a blown head gasket, and had gotten so hot that a plastic tag on the oil filter had melted, as well as the heat tabs on the engine. Dan R.'s concluded that by continuing to drive the Durango after the temperature warning light was activated, Dorie further damaged the engine, and thus voided the warranty.

{¶ 8} Thereafter, Dorie and Regina filed a complaint in the Oregon Municipal Court to recover damages for Dan R.'s breach of the warranty agreement. The matter proceeded to a trial before the bench on January 13, 2016. Dorie represented himself and testified on his own behalf. Following the presentation of his case, Dan R.'s moved for a directed verdict without argument, which the trial court denied. Dan R.'s then called as its witnesses: Dorie as on cross-examination, Reichow, and Fred Lloyd, an expert in the

3.

field of auto mechanics. Lloyd testified that Dorie drove the vehicle for an extended period of time in an overheated condition, which damaged the engine. He further testified that, in his experience, such action would void the warranty. When questioned by the court on what would be an excessive amount of time to drive a vehicle once the temperature warning light came on, he stated, "I'm not really sure of an excessive amount of time. It could be 15 minutes. It could be half hour or an hour. When the red light comes on on the engine, or on the vehicle, typically it's hot already. And then if you drive it for another 5 miles, 10 miles, that could be another 15 or 20 minutes, and that's too long. When the light comes on, it needs to be shut off immediately."

{¶ 9} Following the presentation of evidence, the trial court took the matter under advisement, and on February 1, 2016, entered its judgment finding that "[Dorie's] actions in driving the vehicle to the next available exit were reasonable under the circumstances and the defect should be covered by the warranty." The trial court therefore awarded judgment to Dorie and Regina in the amount of $6,590.47, the total amount of the service invoice.

## II. Assignments of Error

{¶ 10} Dan R.'s has timely appealed the trial court's February 1, 2016 judgment, and now asserts three assignments of error for our review:

1. The Trial Court erred by entering judgment in favor of the Plaintiffs-Appellees, and denying Defendant-Appellant's Motion for a Directed Verdict where Plaintiff-Appellee Dorie M. Fobbs, II, lacked

4.

standing to prosecute Plaintiffs-Appellees' claims where Plaintiff-Appellee Regina Fobbs was the sole owner of the motor vehicle at issue.

2. The Trial Court erred by entering judgment in favor of the Plaintiffs-Appellees, denying Defendant-Appellant's Motion for a Directed Verdict, and failing to dismiss Plaintiff-Appellee's claims with prejudice where Plaintiff-Appellee Dorie M. Fobbs, II, a non-attorney, pro se Plaintiff, engaged in the unauthorized practice of law by representing his wife, Plaintif-Appellee Regina Fobbs, at trial and all other aspects of the litigation.

3. The Trial Court erred by entering judgment in favor of Plaintiffs-Appellees, where such judgment was against the manifest weight of the evidence.

### III. Analysis

{¶ 11} In its first assignment of error, Dan R.'s argues that Dorie lacked standing to prosecute his claim, based on the fact that the Durango was titled in Regina's name.

{¶ 12} "[S]tanding is '[a] party's right to make a legal claim or seek judicial enforcement of a duty or right.'" *Wells Fargo Bank, N.A. v. Horn*, 142 Ohio St.3d 416, 2015-Ohio-1484, 31 N.E.3d 637, ¶ 8, quoting *Black's Law Dictionary* 1625 (10th Ed.2014). "Whether a party has established standing to bring an action before the court is a question of law, which we review de novo." *Moore v. City of Middletown*, 133 Ohio St.3d 55, 2012-Ohio-3897, 975 N.E.2d 977, ¶ 20. "To succeed in establishing standing,

5.

plaintiffs must show that they suffered (1) an injury that is (2) fairly traceable to the defendant's allegedly unlawful conduct, and (3) likely to be redressed by the requested relief." *Id.* at ¶ 22, citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Applied in the context of contract claims, the Ohio Supreme Court has stated, "Only a party to a contract or an intended third-party beneficiary of a contract may bring an action on a contract in Ohio." *Thornton v. Windsor House, Inc.*, 57 Ohio St.3d 158, 161, 566 N.E.2d 1220 (1991).

{¶ 13} Here, Dan R.'s argues that Dorie was not a party to the contract, but instead was acting as the agent for Regina, who is the owner of the Durango. We disagree, and find that under the present circumstances, Dorie was a party to the contract with Dan R.'s. The record demonstrates that Dorie contacted Dan R.'s about the vehicle that he drove, which was revealed at trial to be titled in his wife's name. He and Dan R.'s reached an agreement on the replacement of the engine. Dorie then paid for the service, and followed up on the terms of the warranty. Lastly, it was Dorie who was driving the vehicle when it overheated. Notably, there is nothing in the record to indicate that Dan R.'s ever had contact with Regina. Thus, we hold that Dorie is the proper party to bring the claim against Dan R.'s.[1]

{¶ 14} We further note that our holding is in line with the admonition from the Ohio Supreme Court that "[J]udges are cautioned to remember, standing is not a technical rule intended to keep aggrieved parties out of court. 'Rather, it is a practical concept

---

[1] Dan R.'s does not address in its appellate brief the fact that Regina is also a named plaintiff in this action.

designed to insure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented.'" *Moore* at ¶ 47, quoting *Fort Trumbull Conservancy, L.L.C. v. Alves*, 262 Conn. 480, 486, 815 A.2d 1188 (2003). In this case, Dorie is the aggrieved party, as he was the one who paid for the service to replace the engine. Therefore, we hold that Dorie has standing to assert his claim against Dan R.'s.

{¶ 15} Accordingly, Dan R.'s first assignment of error is without merit.

{¶ 16} In its second assignment of error, Dan R.'s contests that Dorie engaged in the unauthorized practice of law when he prosecuted the case pro se. Consistent with its theory under the first assignment of error, Dan R.'s contends that Regina is the only party with standing to sue. Because she did not participate in the trial or any other part of the proceedings, Dan R.'s argues that Dorie improperly acted as her attorney, and thus the case should be dismissed based on Regina's failure to prosecute her claim. However, because we have held that Dorie was a proper party to the contract and has standing to sue, Dan R.'s claim of unauthorized practice of law must fail.

{¶ 17} Accordingly, Dan R.'s second assignment of error is without merit.

{¶ 18} In its third and final assignment of error, Dan R.'s argues that the judgment is against the manifest weight of the evidence. An appellate court reviews judgments from the trial court following a bench trial under the manifest weight of the evidence standard. *Terry v. Kellstone, Inc.*, 6th Dist. Erie No. E-12-061, 2013-Ohio-4419, ¶ 12.

7.

The standard of review for manifest weight is the same in a civil case as in a criminal case. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 17. As such, we must weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *Id.* at ¶ 20. In so doing, "the court of appeals must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21.

{¶ 19} Dan R.'s first contests the trial court's determination that Dorie's conduct in driving the Durango to the Bowling Green exit was reasonable. In support, Dan R.'s points to the testimony of its expert that "when the red light comes on, [the vehicle] needs to be shut off immediately," and the expert's conclusion that Dorie's conduct was unreasonable and that, in his experience, such conduct would have voided the warranty on the engine. Secondly, Dan R.'s argues that the judgment amount of $6,590.47 is against the manifest weight of the evidence where it included additional costs for parts and labor not associated with installation of the engine.

{¶ 20} Upon review, we cannot say that this is the exceptional case where the trial court lost its way and created a manifest miscarriage of justice. The uncontroverted testimony from the trial reveals that Dan R.'s sold Dorie a used engine with a 6 month / 6,000 mile warranty. During the warranty period, the engine likely blew a head gasket and began to overheat. At the time, Dorie was on Interstate 75 in a construction zone in

8.

heavy traffic. Because he felt like he could not safely stop immediately, he drove the vehicle for eight minutes to the next exit. The trial court found that Dorie's conduct was reasonable under the circumstances, and that the engine should be covered under the warranty. We agree. Furthermore, as to the amount of the judgment, there was no testimony presented evidencing that the warranty covered only the cost of the engine. Indeed, to the contrary, when asked whether the warranty would cover parts, labor, or both, Reichow replied, "It would cover both." Therefore, we hold that the trial court's judgment in favor of appellees in the amount of $6,590.47 is not against the manifest weight of the evidence.

{¶ 21} Accordingly, Dan R.'s third assignment of error is not well-taken.

## IV. Conclusion

{¶ 22} For the foregoing reasons, the judgment of the Oregon Municipal Court is affirmed. Dan R.'s is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.       _____
              JUDGE
Stephen A. Yarbrough, J.

James D. Jensen, P.J.       _____
CONCUR.            JUDGE

              _____
              JUDGE

9.